**SIGNED THIS: October 10, 2023**

_____
**William V. Altenberger
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| STEVEN A. MEADE and ) | Case No.  22-90351 |
| ) | |
| SANDRA S. MEADE, ) | |
| Debtors. ) | |

**O P I N I O N**

The matter before the Court is the objection filed by Steven and Sandra Meade (jointly Meades and individually Steven Meade or Sandra Meade) to the claim of Iroquois Federal Savings and Loan Association (Iroquois).

The facts are not in dispute. In March of 2020 Iroquois made an agricultural loan to Over 40 Farms, LLC (Over 40). The principal members and managers of Over 40 are Douglas Ronk, the Meades' son, and Rae Ann Ronk, their daughter-in-law (jointly Ronks and individually Douglas Ronk or Rae Ann Ronk). The loan was evidenced by a note signed by Over 40; an

1

agricultural loan agreement signed by Over 40; two agricultural security agreements, one signed by Over 40 and one signed by Over 40 and the Ronks individually; a UCC financing statement signed by the Ronks and recorded; an assignment of rents signed by the Ronks; and four commercial guaranties, one each signed by Douglas Ronk, Rae Ann Ronk, Steven Meade and Sandra Meade. Subsequently in March of 2021 a change in terms agreement was signed by the Ronks, the Meades and Iroquois, and in June of 2021 the Ronks signed a real estate mortgage that was recorded.

The security agreements gave Iroquois a security interest in crops and their proceeds, livestock, supplies, products of crops or livestock, equipment, and various other forms of security. After the loan documents were signed, it was learned that Longview Bank held a security interest in the crops and their proceeds with priority to that of Iroquois and after a sale of the crops, the crop proceeds were paid to Longview Bank.

In August of 2022 the Ronks filed a Chapter 13 case in bankruptcy and their plan was confirmed. In August of 2022 the Meades also filed a Chapter 13 case in bankruptcy, which is the case currently before this Court. Iroquois filed a proof of claim based on their guaranties and the Meades objected to it.[1]  The Meades filed a second amended plan which provided that Iroquois would be paid its claim directly by Douglas Ronk, but included a provision for payment of any remaining balance through their plan.  Iroquois objected to the second amended plan, contending that the Meades could not delay providing for its claim until it becomes certain that the claim would not be fully provided for in the Ronks' bankruptcy, but that they must provide

---

[1] After the Ronks' Chapter 13 plan was confirmed and before the hearing on the Meades' objection to Iroquois's proof of claim in this Chapter 13 case, Douglas Ronk passed away.

for the full payment of the claim in their plan. Iroquois acknowledged, however, that it is not entitled to a "double recovery."

Prior to the scheduled evidentiary hearing on August 23, 2023, on July 19, 2023, the Meades advised the Court that they were willing to stipulate that the guaranties at issue are ones of absolute guaranty of payment, as distinguished from conditional guaranties of payment. With that concession, the Meades focused their arguments upon the invalidity of the guaranties. At the close of the hearing, the Court took the matter under advisement.

Bankruptcy Rule 3001 governs the filing of proofs of claims. Fed. R. Bank. P. 3001(a). Among other things, it sets forth requirements as to form and content and evidence of perfection of a security interest  Those requirements, found in Rule 3001(a) - (e), were summarized by the bankruptcy court in *In re O'Brien*, 440 B.R. 654 (Bankr. E.D. Pa. 2010):

> Rule 3001(a) requires that the proof of claim "conform substantially to the appropriate Official form," which is Official Form No. 10. Rule 3001(b) requires that the proof of claim be executed by the creditor or the creditor's authorized agent. Rule 3001(c) provides that if the claim is "based on a writing," a copy of the writing be attached to the proof of claim unless it has been lost or destroyed, in which case a statement of the "circumstances of the loss or destruction" must be filed with the claim. Rule 3001(d) provides that if the claimant asserts that it holds a security interest in property of the debtor, the proof of claim "shall be accompanied by evidence that the security interest has been perfected." Rule 3001(e) addresses certain obligations of holders of claims that were transferred to the holder.

Rule 3001(f) provides that a proof of claim executed and filed in accordance with those rules constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). *Prima facie* validity "simply means that all the facts in the claim are presumed to be true unless disproved by some evidence to the contrary." *Bashir v. Sievers*, 2018 WL 1531800 *3 (S.D. Ill. 2018). This evidentiary presumption remains intact even after an objection to the claim is filed.

Section 502(a) of the Bankruptcy Code provides a proof of claim is deemed allowed unless a party in interest objects. Section 502(b) sets forth the standards of allowability. 11 U.S.C. § 502(a) & (b). To the extent a claim falls within any of the nine paragraphs of §502(b), the claim is not allowable. As relevant here, §502(b)(1) provides that a claim is not allowable if it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." A shifting burden of proof applies to objections to claims:

> Claim objectors carry the initial burden to produce some evidence to overcome the rebuttable presumption of validity. The evidence set forth by the objecting party must be of a probative force equal to that of the allegations asserted in the claim. "Once the objector has produced some basis for calling into question allowability of a claim, the burden then shifts back to the claimant to produce evidence to meet the objection and establish that the claim is in fact is allowable."*[In re] O'Malley,* 252 B.R. [451]],] 456 Bankr.N.D.Ill. 1991)]. However, the ultimate burden of persuasion always remains with the claimant to prove entitlement to the claim. (Citations omitted.)

*In re Vanhook*, 426 B.R. 296, 298-99 (Bankr. N.D.Ill.1999).

The Meades do not appear to contest the *prima facie* validity of Iroquois' proof of claim and this Court finds that the proof of claim filed by Iroquois meets the requirements of the Bankruptcy Rule 3001. The Meades' guaranties are attached to Iroquois' proof of claim While the guaranties themselves are not secured, the debt which was guaranteed was secured and copies of the loan documents are attached to Iroquois' proof of claim. The Meades assert that the guaranties are not enforceable under §502(b)(1). The Meades carry the burden to refute the legal sufficiency of Iroquois' proof of claim. *In re Saroff*, 509 B.R. 166 (Bankr.E.D. Tenn. 2014).

The Meades do not assert that Iroquois misled them by not telling them that Longview Bank held a prior claim to the crop and their proceeds. Rather, either through their written

objection or by the testimony of what occurred at the time the guaranties were signed, they assert: (1) their guaranties are invalid as they are based on the parties not knowing of Longview Bank's prior lien on the crops and their proceeds, such that there was no "meeting of the minds" between the parties, (2) they were led to believe the security for the loan was adequate, and (3) they would not have signed the guaranties if they had known of Longview Bank's prior lien on the crops and their proceeds.

The Meades' primary contention is that the guaranties are unenforceable because the Meades and Iroqouis were unaware of Longview Bank's prior lien on crops and their proceeds. The Court notes that no representation was made by Iroquois that its lien on crops and their proceeds had priority. It would appear that neither the Meades or Iroquois conducted any investigation, a due diligence, to determine if there were any prior liens on the crops and their proceeds. The issue is whether the mutual lack of knowledge as to Longview Bank's prior lien is legally sufficient to prevent enforcement of the Meades' guaranties.

The Meades' position invokes the common law doctrine of mutual mistake. Williston, in his work on contracts, states the rule thus:

> Mutual mistake consists of a clear showing that both contracting parties misunderstood a fundamental subject matter or basic terms of the contract. . . . [A misconception] must go to the very nature of the deal. . . .
>
> For purposes of the defense of mutual mistake regarding a material fact, a material fact is one that goes to the root of the matter or the whole substance of the agreement. Their mistake of fact must not merely be incidental but must be so fundamental in character that the minds of parties did not meet. Whether the mistake concerned a thing material to the contract depends on all the facts and circumstances considered as they then existed when the contract was formed.
>
> To justify the rescission of a contract, a mutual mistake must regard a fact that is vital to completion of the contract; it must be so substantial and fundamental as to defeat the

object of parties in making the contract. That is, for rescission, a mistake must relate to the intrinsic nature of the bargain.

Williston on Contracts §70:69 (4th ed.).

Williston cites *Steinmeyer v. Schroeppel*, 226 Ill. 9, 14 (1907), in which the Illinois Supreme Court characterized a mistake which justifies equitable relief as one which "must affect the substance of the contract, and not a mere incident or the inducement for entering into it." In contrast, a mutual mistake as to a collateral fact will not justify the avoidance of a contract, but is "merely another name for immaterial mistake." 27 Williston at §70:84.

The elements of the doctrine of mutual mistake under Illinois law are (1) that the mistake relate to a material feature of the contract; (2) that the mistake occurred notwithstanding the exercise of reasonable care; and (3) that the other party can be placed in *status quo*. *John J. Calnan Co. v. Talsma Builders, Inc.*, 67 Ill.2d 213 (1977); *John Burns Const. Co. v. Interlake, Inc.*, 105 Ill.App.3d 19 (1982) (adding element that the mistake be of such grave consequence that it would render enforcement unconscionable).

This Court, based on record before it, concludes that the parties' shared assumption that the loan would be collateralized by a first lien on the crops and their proceeds cannot be considered a mutual mistake which goes to the "whole substance" of the agreement, but that it was merely collateral to the loan transaction. Testimony at trial established that both Sandra and Iroquois were unaware of Longview Bank's prior lien on the crops and their proceeds.[2] Jerry Askren, Iroquois' loan officer, characterized the meeting at which the Meades executed the

---

[2] As to Steven Meade, however, he did not testify and there is nothing in the record to indicate what he knew or didn't know or on what basis he signed the guaranty. Had the Court reached a different result, his failure to testify would have been considered.

guaranties as informal and the execution of the guaranties as perfunctory. Iroquois made no specific representation that it was taking a first lien on the crops and their proceeds. At best, it only represented that the loan was adequately secured. While Sandra expressed some concern as to the amount of the loan, there was no discussion of the nature and the identity of the collateral for the loan or of the value of any specific item of collateral.

More importantly here, as noted earlier, the guaranties signed by the Meades were absolute and unconditional. Under their terms, Iroquois was entitled to enforce the guaranties against them "even when Lender has not exhausted Lenders remedies against anyone else obligated to pay the indebtedness or against any collateral securing the indebtedness . . . ." Given the nature of the guaranties, a mistaken assumption as to the availability of the crops and their proceeds to secure the loan can hardly be regarded as the basis of the parties' bargain and must be regarded as immaterial. See *Wyrick v. Business Bank of Texas, N.A.*, 577 S.W.3d 336 (Tex.App. 2019) (rejecting defense of mutual mistake under similar facts).

Addressing the Meades' second assertion, Sandra Meade testified that Jerry Askren stated that there was "plenty of" or "more than enough " collateral for the loan, but did not mention that Longview Bank held a prior lien on the crop and their proceeds. She also testified she knew Longview Bank had loaned money to the Ronks, but not that Douglas Ronk had double financed the crops and their proceeds. She further testified that Douglas Ronk was present when the loan documents were signed and he did not say he had previously given Longview Bank a lien on crops and their proceeds. Jerry Askren testified he did not recall any discussion of collateral.

Accepting Sandra Meade's testimony that Jerry Askren said there was plenty of collateral, which Jerry Askren did not directly refute, this Court finds that such a representation was made, but concludes that there was no evidence to establish it was inaccurate. The Meades presented no evidence as to the total value of all the collateral at the time the loan was made. Absent such evidence it is not possible to determine whether the collateral had sufficient value to fully repay the loan.

Thirdly, Sandra's assertion at trial that they would not have agreed to guarantee the loan had they known of Longview Bank's prior lien on crops and their proceeds, is likewise unavailing. Apart from being self-serving, this assertion takes their objection into the realm of speculation. Had Iroquois been aware of the true circumstances, it may not have made the loan to the Ronks in the first place, in spite of the willingness of the Meades to offer their guaranties. Had the Meades not been mistaken as to encumbered status of the crops and their proceeds, they may have agreed to guarantee the loan based on other considerations.

A determination as to the enforceability of the Meades' guaranties must be based on what actually occurred, which is that both the Meades and Iroquois entered into the transaction unaware of Longview Bank's prior lien on crops and their proceeds and that Iroquois advanced the funds to their son and daughter-in-law. What is done is done. At this juncture, the Meades cannot be favored by avoiding their guaranties as Iroquois cannot be returned to *status quo* and, for that reason alone, the guaranties cannot be rescinded. *Diedrich v. Northern Illinois Pub.Co.*, 39 Ill.App.3d 851, 860 (1976).

For these reasons, the Meades have failed to rebut the validity of the guaranties and their objection to the Claim of Iroquois is denied. Confirmation of the Second Amended plan will be rescheduled.

This Opinion constitutes this Court's findings of fact and conclusions of law made in accordance with Rule 7052(a)(1) of the Federal Rules of Bankruptcy Procedure. A separate Order will be entered.

# # #